UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL T. BLOUVET,

                                        Plaintiff,

                    -vs-                                        13-CV-1198-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

_____

APPEARANCES:   BERNHARDI & LUKASIK PLLC (STEPHEN EDWARD BROOKS, ESQ., of Counsel), West Seneca, New York, for Plaintiff.

WILLIAM J. HOCHUL, JR., United States Attorney (MARIA PIA FRAGASSI SANTANGELO, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated October 2, 2014 (Item 10).

Plaintiff Michael T. Blouvet initiated this action on December 13, 2013, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Title II and Title XVI of the Act, respectively.  Plaintiff has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Item 6).  For the following reasons, plaintiff's motion is denied.

**BACKGROUND**

Plaintiff was born on December 13, 1964 (Tr. 110).[1]  He filed applications for SSI and SSDI on October 14 and 17, 2011 respectively, alleging disability due to a spinal disorder, with an onset date of September 27, 2011 (Tr. 110-17).  These claims were denied administratively on (*see* Tr. 48-54).  Plaintiff requested a hearing, which was held by video teleconference on June 6, 2013, before Administrative Law Judge ("ALJ") Mark Hecht (Tr. 25-39).  Plaintiff appeared and testified at the hearing, and was represented by counsel.

On June 14, 2013, ALJ Hecht issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 12-21).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairment (identified as degenerative disc disease of the lumbar spine), while "severe," did not meet or medically equal the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 18).  The ALJ discussed the evidence in the record regarding plaintiff's medically determinable impairment–including diagnostic studies, reports and opinions from treating and consultative medical sources, and plaintiff's hearing testimony and statements about the limiting effects of his impairments–and found that the objective evidence in the record did not support plaintiff's allegations of total disability (Tr. 18-19).  Based upon his view of the evidence, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 8).

perform the full range of sedentary work[2] with certain specified exertional limitations, precluding him from performing his past relevant work as a farm laborer (Tr. 18-20). Considering plaintiff's age (48 years at the time of the hearing), education (high school), work experience, and RFC (with limitations), and applying Rules 201.18 and 201.19 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"), the ALJ determined that jobs exist in significant numbers in the national economy that plaintiff can perform, and therefore he has not been disabled within the meaning of the Act at any time since the alleged onset date of September 27, 2011 (Tr. 20-21).

The ALJ's decision became the final decision of the Commissioner on October 15, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-3), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because (1) the ALJ erred at step three of the sequential evaluation in assessing whether plaintiff's impairment met or equaled the criteria of the Listings; (2) the ALJ's assessment of plaintiff's RFC is not supported by substantial evidence; and (3) the ALJ failed to properly assess plaintiff's credibility.  *See* Item 6-1.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence.  *See* Item 9.

---

[2]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §§ 404.1567(a), 416.967(a).

## DISCUSSION

### I.      Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis.

1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d

-5-

1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.   Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is

presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c),  416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the

applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    The ALJ's Disability Determination

In this case, ALJ Hecht determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since September 27, 2011, the alleged onset date (Tr. 17). At step two, the ALJ determined that plaintiff's spinal impairment is "severe" as that term is defined in the regulations because it causes "some work related functional limitations" (Tr. 18). At step three, the ALJ found that plaintiff's spinal disorder did not meet or medically equal the requirements of Listing 1.04 (*Disorders of the spine*), noting the absence of any medical source opinion of record to indicate that plaintiff's impairment satisfied the Listing criteria  (*id.*).

The ALJ then found that plaintiff had the RFC for the full range of sedentary work, subject to the following functional limitations: plaintiff could sit for at least six hours in an eight-hour workday with normal breaks; stand or walk for at least two hours in an eight-hour

workday with normal breaks; and lift and carry objects weighing ten pounds occasionally (*id.*).  In making this determination, the ALJ discussed the medical evidence in the record, including reports of MRIs, CT scans, and other diagnostic studies showing "essentially normal" findings (Tr. 19, 224); results of physical examinations indicating consistently reported reduced range of motion of the spine, but otherwise "rather negative objective findings" (Tr. 19); a functional capacity assessment form completed by plaintiff's treating nurse practitioner, Phyllis Bessey, FNP-C, expressing the opinion that plaintiff was unable to lift and carry more than ten pounds, stand or walk for more than two hours per day, and sit for more than 15 minutes without changing positions (Tr. 296) (to which the ALJ gave "very little weight" (Tr. 20)); and the opinion of consultative examining physician Dr. Samuel Balderman indicating that plaintiff had "[m]oderate limitation in bending and lifting due to lumbar pain" (Tr. 209) (to which the ALJ gave "great weight" (Tr. 20)).  According to ALJ Hecht, considering the totality of the objective medical evidence, along with evidence of plaintiff's activities of daily living, plaintiff's allegations regarding the severity and limiting effects of his back pain were "not fully credible" (Tr. 19-20).

Based on this assessment, the ALJ determined at step four of the sequential evaluation that plaintiff could not return to his past relevant medium exertional level work as a farm laborer (Tr. 20), and at step five, that Rules 201.18 and 201.19 of the Grids directed a finding of "not disabled," considering plaintiff's age, work experience, and RFC for sedentary work (Tr. 21).

IV.     **Plaintiff's Motion**

A.     **Listing Severity**

Plaintiff contends that the ALJ failed to properly consider whether his degenerative

disc disease met or medically equaled the criteria for Listing 1.04A.  To meet this Listing,

the claimant must make a threshold showing of a spinal disorder (such as degenerative

disc disease), "resulting in compromise of a nerve root … or the spinal cord …," 20 C.F.R.

Pt. 404, Subpt. P, App. 1, § 1.04, as well as the following:

> Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness) accompanied by sensory
> or reflex loss and, if there is involvement of the lower back, positive
> straight-leg raising test (sitting and supine) ….

*Id.*, § 1.04A.

As indicated above, in this case ALJ Hecht found that plaintiff's degenerative disc

disease was not of listing severity because the record contained no medical source opinion

addressing whether plaintiff's impairments satisfied the criteria of section 1.04A.  According

to plaintiff, in light of the ALJ's clearly defined duty to determine whether a condition meets

or equals a listed impairment, *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii), as

well as the court-recognized affirmative duty on the part of the ALJ to develop a deficient

administrative record, *see e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999),  the

ALJ's lack of any meaningful discussion as to whether the requirements of Listing 1.04A

have been met constitutes legal error requiring remand.

The Second Circuit has made clear that lack of specificity in the ALJ's Listing

analysis does not, in and of itself, necessitate remand; the ALJ need not spell out his

analysis or rationale with great detail, as long as the court can clearly discern that there is substantial evidence in the record to support his conclusion. *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (cited in *Brown o/b/o C.M.B. v. Colvin*, 2014 WL 7272964, at *6 (W.D.N.Y. Dec. 18, 2014); *see also Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (absence of express rationale for ALJ's decision on Listings does not require remand so long as reviewing court is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence."). As outlined above, the ALJ's written determination in this case provides ample discussion of the evidence pertaining to plaintiff's functional limitations due to his spinal disorder to allow the court to discern the rationale for finding that the impairment did not meet or medically equal the requirements of Listing 1.04A.

For example, the ALJ specifically noted the results of several diagnostic studies performed throughout the alleged period of disability, including a September 2011 MRI of the lumbar spine showing "[b]road based protrusion of the L4-5 disc with associated foraminal encroachment on the left side and slight impingement on the right L5 nerve root" (Tr. 19, 216). This MRI was reviewed by spinal neurosurgeon Eric Roger, M.D., on May 30, 2012, who reported the results as "essentially normal" and noted further that "[t]here is no radiologic explanation for [plaintiff's] chronic low back pain" (Tr. 224). A repeat MRI in December 2012 showed decreased disc space height with "mild bulge and spondylitic changes of the endplates" at L4-5 (Tr. 219), reported upon review by Thomas Lo, M.D., as showing "some straightening of the normal lumbar lordosis and no evidence of serious impingement of the disks into the spinal canal" (Tr. 217). The ALJ also referred to nerve conduction velocity and electromyography studies in March 2012, showing findings "within

normal limits" (Tr. 254), as well as consistently reported negative objective findings upon physical examination with regard to muscle strength (*see, e.g.,* Tr.  209, 217, 233, 236, 247, 260, 286), straight leg raising (*see, e.g.*, Tr. 196, 208, 222, 233, 236, 247, 267, 286), and sensation and reflexes (*see, e.g.*, Tr. 196-97, 209, 217, 222, 228, 233, 247, 260, 286, 289, 292, 294).

Plaintiff also contends that the ALJ's findings at steps three were flawed because the ALJ failed to evaluate plaintiff's obesity in conjunction with his musculoskeletal impairments, in accordance with the guidelines of Social Security Ruling ("SSR") 02-1p. SSR 02–1 p explains that the Social Security regulations "consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability.  The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  SSR 02–1 p, 2002 WL 34686281 (S.S.A. Sept. 12, 2002).  Thus, where the record contains evidence indicating limitation of function due to obesity, the ALJ must consider the effect of obesity on the claimant's ability to do basic work activities at steps two through four of the sequential evaluation process.  *See Sotack v. Astrue*, 2009 WL 3734869, at *4–5 (W.D.N.Y. Nov. 4, 2009) (where record contains evidence of obesity and limiting effects, ALJ is required to consider its impact even if claimant did not allege obesity as an impairment).  "Conversely, the ALJ's obligation to discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the claimant's ability to perform work

related activities." *Farnham v. Astrue*, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011) (citing *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 276 (N.D.N.Y.2009) (no error where ALJ fails to specifically discuss obesity at steps two and three, when the record provides no evidence the claimant is limited in basic work activities due to obesity; citing cases); see also Oaks v. Colvin, 2014 WL 5782486, at *9-10 (W.D.N.Y. Nov. 6, 2014) (ALJ not required to consider impact of obesity where claimant did not allege obesity as an impairment, and record contained no medical source evidence to support a finding that obesity negatively impacted plaintiff's ability to work).

Upon review of the ALJ's written determination in light of the objective medical evidence and hearing testimony, the court finds no basis for remand due to the ALJ's failure to consider the effects of plaintiff's obesity at the appropriate steps of the sequential evaluation process.  First of all, plaintiff did not allege obesity as a disabling condition or contributing factor in his application for benefits, or at his hearing, and there is no indication that he raised obesity as an issue for consideration by the Appeals Council.  Moreover, the court's review of the record in this case reveals no medical source evidence or hearing testimony to lend support to plaintiff's contention that his obesity, either alone or in combination with his degenerative disc disease, had any functional effect on his ability to perform basic work activities. the ALJ failed to properly evaluate the effect of plaintiff's obesity at the appropriate steps of the sequential evaluation.

Based on this review, the court finds substantial support for the ALJ's conclusion that plaintiff's impairment did not satisfy the requirements of Listing 1.04.  As in *Salmini*, while it is true that the ALJ might have been more specific in detailing his reasoning, "this is not a case in which [the court is] unable to fathom the ALJ's rationale in relation to

evidence in the record ....”  371 F. App'x at 113.  To the contrary, the ALJ's reasoning is articulated in sufficient detail throughout the entire written determination for the court to discern substantial evidentiary support for his conclusions regarding Listing severity at step three of the sequential evaluation.

Accordingly, plaintiff is not entitled to remand on the ground that the ALJ failed to properly consider whether his degenerative disc disease met or medically equaled the criteria for Listing 1.04A.

## B.    RFC

Plaintiff next contends that the ALJ's assessment of RFC for the full range of sedentary work is not supported by substantial evidence.  As explained in the Social Security Administration's policy interpretation ruling regarding the assessment of RFC:

> RFC is what an individual can still do despite his or her limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*.

SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work."  *Domm v. Colvin*,  2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545(a)(3)-(4)). The RFC determination "must be set forth with sufficient

-14-

specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see also Hamlin v. Colvin*, 2014 WL 4669244, at *6 (N.D.N.Y. Sept. 18, 2014).

As indicated above, in this case ALJ Hecht clearly explained his reliance on the objective medical evidence to support his RFC assessment, including the "essentially normal" or "rather negative" findings reflected in the results and analyses of diagnostic studies, physical examination reports, and medical source opinion evidence.  The ALJ accorded significant weight to the one medical source opinion in the record regarding plaintiff's capacity for physical activity–*i.e.*, the consultative examiner's opinion that plaintiff was only moderately limited in bending and lifting–noting its consistency with the medical evidence as a whole, as well as with the regulatory requirements for assessing a claimant's ability to perform sedentary work.  *See* Tr. 20 (citing 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3  (S.S.A. July 2, 1996) ("[E]ven though 'sedentary work' represents a significantly restricted range of work, this range in itself is not so prohibitively restricted as to negate work capability for substantial gainful activity in all individuals.").  By contrast, the ALJ gave little weight to the nurse practitioner's functional capacity assessment, determining upon "careful review of her treatment notes" that her opinion regarding plaintiff's limited ability to sit for more than 15 minutes without changing positions was based on plaintiff's subjective allegations rather than on the nurse practitioner's own objective findings (Tr. 20).

Upon review of the ALJ's written determination, and considering the objective medical findings relied upon in light of the record as a whole, the court finds that the ALJ's RFC assessment was accomplished in accordance with the requirements of the

regulations, administrative rulings, and caselaw, and is supported by substantial evidence. As noted, the ALJ's decision reflects his consideration of the relevant medical findings, hearing testimony, and other evidence in the record with sufficient specificity to enable the court to determine the rationale and evidentiary support for his assessment that plaintiff would be able to meet the physical requirements of sedentary work.  Indeed, as discussed at greater length above, the results of diagnostic testing and the findings of examining sources regarding plaintiff's muscle strength, straight leg raising, sensation, reflexes, and other physical functioning–consistently reported within normal limits–provide convincing support for the ALJ's determination that plaintiff could sit for six hours with normal breaks, stand or walk for two hours with normal breaks, and occasionally carry objects weighing up to ten pounds.

The court also finds that the ALJ's evaluation of the relative weight to be accorded to the opinions of Dr. Balderman and NP Bessey was accomplished in accordance with the directives of the Social Security regulations.  SSR 06–03p provides in this regard that, in evaluating "all relevant evidence in a case record," the ALJ must consider not only opinion evidence from "acceptable medical sources," but also evidence provided by "[m]edical sources who are not 'acceptable medical sources,' such as nurse practitioners …."  SSR 06–03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006).  The ruling directs the ALJ to use essentially the same factors in evaluating the opinions of these "other sources" as are used to evaluate the opinions of "acceptable medical sources" set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  As explained in the ruling:

> Not every factor for weighing opinion evidence will apply in every case.  The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case.  Each case

must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

SSR 06–03p, 2006 WL 2329939, at *5. Further:

Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at *6. Under this guidance, "[w]hile the Commissioner is thus free to decide that the opinions of 'other sources' … are entitled to no weight or little weight, those decisions should be explained." *Sears v. Astrue*, 2012 WL 1758843, at *3 (D.Vt. May 15, 2012); *see also Colon v. Astrue*, 2013 WL 2245457, at *10 (W.D.N.Y. May 21, 2013) (finding abuse of discretion for ALJ to "entirely ignore" other source evidence).

In this case, as discussed above, ALJ Hecht considered the limitations indicated in NP Bessey's functional capacity assessment, but found that her conclusions were entitled to very little weight because they were based on plaintiff's subjective allegations rather than on the objective findings and observations reflected in the notes of physical examinations performed from September 2011 through May 2013 (Tr. 20). Those notes reveal that throughout this treatment period, NP Bessey consistently reported that plaintiff had no acute distress, a normal gait, and no positive neurological findings except for pain on minimal bending (*id.*; *see* Tr. 258-87; 296-306). The notes further reflect plaintiff's repeated denials upon examination that he had any limitation of movement, muscle aches,

swelling, or neurological symptoms (*see* Tr. 266, 276, 285, 297), providing additional support for the ALJ's rejection of the nurse practitioner's functional assessment.

Based on this review, the court finds that the ALJ's discussion of the evidence in the record substantially complies with the directives of the Social Security regulations and rulings in a manner that allows subsequent reviewers to follow his reasoning, and that there is substantial evidence to support the ALJ's assessment of plaintiff's residual functional capacity.

## C.   Credibility

Finally, plaintiff contends that the ALJ failed to properly assess plaintiff's credibility with respect to his subjective complaints of pain.  The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged.  *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)).  The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant.  Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.  If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. § 416.929.

The Regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.  20 C.F.R. § 404.1529(c)(3)(i)–(vii); *see Meadors v. Astrue*, 370 F. App'x 179, 184 n. 1 (2d Cir. 2010). The Commissioner's policy interpretation ruling on this process provides the following further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the ALJ noted plaintiff's testimony regarding his activities of daily living, the limited effectiveness of physical therapy and pain medication, and the severity of his lower back pain, but found that the totality of the evidence did not corroborate plaintiff's claim of total disability due to back pain.  As already discussed, the ALJ carefully evaluated the objective medical findings and opinion evidence of record, and found that plaintiff's

subjective complaints were not fully credible to the extent his symptomatology prevented him from performing sedentary work.   In the court's view, this finding is sufficiently grounded in the evidence and articulated in the ALJ's determination to make clear to plaintiff, to this court, and to subsequent reviewers the weight given to plaintiff's statements about his functional limitations, and the reasons for that weight.

As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security Act, its implementing regulations, and the weight of controlling authority. Accordingly, plaintiff is not entitled to reversal or remand on this ground.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Accordingly, plaintiff's motion for judgment on the pleadings (Item 6) is denied, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated:   February 20, 2015